**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT OWENSBORO**

**CARLOS THURMAN** **PLAINTIFF**

**v.** **CIVIL ACTION NO. 4:23CV-P98-JHM**

**COOKIE CREWS et al.** **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Brittany Lanier's motion for summary judgment (DN 52). *Pro se* Plaintiff Carlos Thurman has responded (DN 54), and Defendant has replied (DN 55). The matter being ripe, the Court will grant the summary-judgment motion in part and deny it in part for the reasons set forth below.

## I. THE PROCEEDINGS IN THIS CASE

Plaintiff, then a prisoner at Green River Correctional Complex (GRCC), filed a 42 U.S.C. § 1983 civil-rights complaint. DN 1-4. He sued a number of prison and Department of Corrections (DOC) employees, including Stacy Gibson, the GRCC Deputy Warden, and Brittany Lanier, the Grievance Coordinator at GRCC. *Id*. at PageID #: 1-3. He sued all Defendants in their individual and official capacities. *Id*. at PageID #: 1.

On initial review of the complaint under 28 U.S.C. § 1915A, the Court ruled that Plaintiff's retaliation claim against Defendants Lanier and Gibson failed to state a claim because the allegations did not support a finding that they had satisfied two of the three parts of a First Amendment retaliation claim. DN 15, PageID #: 156-57. The Court also found that Plaintiff's claims against the other Defendants failed to state a claim under the doctrine of *respondeat superior*, or supervisory liability. *Id*. at PageID #: 158-59. Plaintiff appealed the dismissal of his case to the Sixth Circuit Court of Appeals. DN 21; *Gibson v. Crews*, Appeal No. 24-5154.

The Sixth Circuit upheld the Court's dismissal of Defendants based on supervisory liability but vacated the Court's Judgment as to Defendant Lanier and issued a remand for the Court to consider Plaintiff's First Amendment retaliation claim against her. DNs 30 and 31.

## II. COMPLAINT

The complaint (DN 1-4) alleged that after Plaintiff filed grievances involving or against Defendant, she retaliated against him by denying another inmate's request for Plaintiff to assist him at a Grievance Committee hearing on April 21, 2023; by not hiring him as a Grievance Aide on three separate occasions (May 10, May 24, and June 7, 2023); by letting one position remain unfilled rather than hire him as Grievance Aide (June 9, 2023); and by not rescheduling an appointment to accommodate a scheduling conflict requiring Plaintiff to be in two meetings simultaneously (June 21, 2023).[1]

According to the complaint,[2] on April 5, 2023, Plaintiff filed a grievance on Defendant,[3] the Grievance Coordinator, asserting that the grievance process of Corrections Policies and Procedures (CPP) 14.6[4] "was not being followed." DN 1-4, PageID #: 95.

Plaintiff also filed a grievance on April 21 because another inmate, Willdarien Jones, "submitted a request for Plaintiff to assist him [in representing another inmate] at the Grievance Committee" but on April 21, 2023, Plaintiff received notice that Defendant had denied Jones's request. *Id*. Plaintiff asserted that he was informed by Jones that Defendant told him, "that had Plaintiff not filed a grievance on her, she would have allowed Plaintiff to assist[.]" *Id*.

Plaintiff attached two affidavits from Jones. The first dated April 28, 2023, stated that on April 23, 2023, Jones received notice that Defendant had denied his request to have Plaintiff assist

---

[1] Plaintiff's response to the summary-judgment motion does not refer to this incident.
[2] Plaintiff signed the complaint under penalty of perjury that the information therein is "true and correct."
[3] Hereinafter, Defendant Lanier will be referred to simply as "Defendant."
[4] CPP 14.6 sets out the prison grievance process.

him at a Grievance Committee hearing. DN 1-6. Jones made the request because Plaintiff had assisted him in the past at another prison and was "very knowledgeable when it comes to policy." *Id*. Jones continued, "the Grievance Coordinator never even talked to me about [Plaintiff] and it seems like she is being bias toward [Plaintiff] for some personal reason." *Id*. In a second affidavit dated July 11, 2023, Jones averred, "During the month of April, Grievance Coordinator [Defendant] had advised [him] that [Plaintiff] shouldn't have . . . filed a grievance on me or she would have allowed him to represent me." DN 1-7.

Plaintiff also alleged that Defendant posted an open position for a Grievance Aide on May 10, May 24, and June 7, 2023; that he submitted his application each time; but that "he was not considered even with close to 20 years of experience" of being a Grievance Aide in other facilities DN 1-4, PageID #: 96. According to Plaintiff, instead of hiring him for the May 24 posting, Defendant instead asked another inmate, James R. Hendrixson, to apply for the job "because she didn't want to hire Plaintiff."[5] *Id.* Among the attachments to his complaint is Hendrixson's affidavit in which he avers that Defendant "came to me and asked if I would work as a grievance aide." DN 1-11.

Plaintiff filed a grievance on June 7 after Defendant's alleged retaliatory acts of not hiring Plaintiff in favor of Hendrixson but before Defendant's successful effort to cap the number of Grievance Aides at two, allegedly to avoid hiring Plaintiff. DN 52-2, PageID #: 303. In this grievance, Plaintiff complained of Defendant's retaliation when she denied him the "right to assist another inmate at the committee hearing" and closed his April 5 Grievance about that, and in hiring Hendrixson as a Grievance Aide, who had no experience, as opposed to Plaintiff who had over 20

[5] Inmate Hendrixson began as a Grievance Aide on May 31. DN 52-1, PageID #: 265.

years of experience. *Id*. Then, with Deputy Warden Gibson's permission, the job was eliminated "to keep Plaintiff from getting that job."[6] DN 1-4, PageID #: 96.

Plaintiff alleged Defendant's actions were retaliation in violation of the First Amendment. Included among the attachments to Plaintiff's complaint are affidavits from other inmates Jones (DNs 1-6, 1-7), Hendrixson (DN 1-11), David Nichlos[7] (DN 1-15), Matthew Dixon (DN 1-16), and Jeremy Stone (DN 1-17); an April 24, 2023, list of the then-current three Grievance Aides (DN 1-8); and three postings for Grievance Aide positions (DN 1-9, DN 1-10, DN 1-12).

## III. SUMMARY-JUDGMENT MOTION

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion. *Id*. at 252.

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). The non-moving party's evidence is to be believed, *Anderson*,

[6] The Sixth Circuit upheld the Court's dismissal of Deputy Warden Gibson because Plaintiff "did not plausibly allege that Gibson acted with a retaliatory motive." DN 30, PageID #: 198.

[7] This affidavit concerns events occurring after the relevant time.

477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The fact that a plaintiff is *pro se* does not lessen his obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted).

**A. Protected Conduct**

To state a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

On remand, the Sixth Circuit noted that the complaint's allegations were sparse but that filing a nonfrivolous grievance is protected conduct. DN 30, PageID #: 197.

Regarding the protected-conduct element, the Sixth Circuit recently opined:

> With respect to the first element, this court has held that "[a]n inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). The principal limitation to this constitutional right is if the grievance is "frivolous." *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010); *see also King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012) ("Abusive or manipulative use of a grievance system would not be protected conduct.").

*Richards v. Perttu*, 96 F.4th 911, 917 (6th Cir. 2024), *aff'd,* 605 U.S. 460 (2025).

Here, Plaintiff filed the two grievances he argues were protected conduct on April 9 and June 7. Defendant's alleged retaliatory acts of not hiring Plaintiff and eliminating the need to hire a third Grievance Aide occurred on June 8-9. The Court considers whether the April 5 and June 7 Grievances were protected conduct, *i.e.*, nonfrivolous.[8]

***1. April 5 Grievance***

*a. Summary-Judgment Motion*

Defendant argues that Plaintiff was not engaged in protected conduct when he filed grievances against or involving her because they were frivolous and lacked merit. DN 52-1, PageID #: 251, 263. She asserts that his April 5 Grievance was without merit because Plaintiff agreed with Defendant's informal resolution, thereby acknowledging that it was meritless. *Id*. at PageID #: 262.

Defendant provides Plaintiff's April 5 Grievance with her response. DN 52-2, PageID #: 281-82. In it Plaintiff stated, "[G]rievance procedure 14.6 not being followed here at GRCC." *Id*. at PageID #: 281. Plaintiff explained that he had been informed by the Grievance Committee members that some of them did not know that they could dissent, which Plaintiff believed to be indicative of Defendant's failure to train them. *Id*. He also suggested that because some Committee members were appointed rather than elected, Defendant was in violation of CPP 14.6, DOC's grievance procedure. *Id*. He asserted that (1) Defendant had not properly trained

[8] According to Defendant, the April 26 Grievance asserting that "the grievance process of C[PP]14.6 was not being followed," DN 1, PageID #: 3, was without merit and therefore frivolous because it was based on an erroneous interpretation of CPP 14.6(II)(M)(1). DN 52-1, PageID #: 263. Because Plaintiff does not address this Grievance in his response, he has abandoned his claim that the April 26 Grievance was protected conduct. The Sixth Circuit's "jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (citing *Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in a response to a motion for summary judgment)); *see also Clark v. City of Dublin*, 178 F. App'x 522, 524-25 (6th Cir. 2006) (same).

Grievance Committee Members, (2) had not held elections for Committee Members, and (3) had not posted summaries of grievance results affecting the population at large in violation of CPP 14.6. *Id*. at PageID #: 281-82. Defendant's response dated April 19 to the grievance (1) explains that the Committee members were aware they could dissent, (2) explains which CCP provision allowed her to temporarily appoint members, and (3) explains that no grievance results had been posted because none affected the population at large. *Id*. at PageID #: 283. She also informed him in that response that GRCC would be "holding inmate committee nominations in the near future for elections to occur." *Id*. Plaintiff indicated on the grievance form that he was satisfied with the informal resolution. *Id*. at PageID #: 281-83.

Defendant offers her affidavit in which she explains her duties as Grievance Coordinator. DN 52-2. She also explains that in investigating Plaintiff's April 5 Grievance she interviewed Committee Members and found that they were, in fact, aware that they had the option to dissent. *Id*. at PageID #: 272, 283 (Defendant's Response to Grievance). Also "due to the number of vacant inmate committee member positions [she] temporarily appointed inmates to the inmate pool, pending a soon to be held election."[9] *Id*. at PageID #: 272, 283 (Defendant's Response to Grievance).

*b. Plaintiff's Response*

In his response, Plaintiff argues that his April 5 Grievance was protected conduct because, in fact, Defendant was not following CPP 14.6 and did need to hold an election. DN 54, PageID #: 326-27. Plaintiff attaches an April 6, 2023, email to Defendant from DOC's John Dunn, which responded to her question about the grievance process raised by Plaintiff's grievance and explaining that "if the number of vacant inmate committee positions makes it difficult to proceed

[9] According to Plaintiff's affidavit, he was elected to represent the general population as a Grievance Committee member. DN 54-1, PageID #: 336.

in an efficient manner with Grievance Committee hearings, the Grievance Coordinator may temporarily appoint inmates to the inmate pool until a new election to the inmate pool is held." DN 54-3, PageID #: 340. Dunn suggested that Defendant send out a memo asking for nominations to the Committee; then depending on how many nominations she received, she could either hold an election or "declare those inmates who were nominated as members." *Id.* He ends his email, "I do not think you can keep using the temporary appointment provision to keep staff inmates on the committee." *Id.*

*c. Defendant's Reply*

Defendant argues that, while Plaintiff points to the letter from Dunn as authority for his grievance's merit, the letter actually confirms her position that she acted within her authority under CPP 14.6 in temporarily appointing committee members. DN 55, PageID #: 368. And she again contends that by agreeing with the informal resolution, Plaintiff "tacitly acknowledged" that his grievance lacked merit. *Id.*; DN 52-2, PageID #: 281 (Grievance).

*d. Analysis*

Under Sixth Circuit precedent, "an inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf" but this right is protected "only if the grievances are not frivolous." *Herron v. Harrison,* 203 F.3d at 415. However, "a claim need not be successful to be non-frivolous." *Davis v. Fiering*, No. 25-1117, 2025 WL 4673600, at *2 (6th Cir. Oct. 16, 2025) (quoting *Bell v. Johnson,* 308 F.3d 594, 607 n. 5 (6th Cir. 2002)). "A grievance is not frivolous just because its underlying premise is erroneous; instead, the touchstone of frivolity is '[a]busive or manipulative use of a grievance system.'" *Id.* (finding an erroneous grievance about whether prisoner-plaintiff should have a paid lunch break non-frivolous as it was not an "'[a]busive or manipulative use of a grievance system'") (quoting *Maben v. Thelen*, 887 F.3d 252,

264 (6th Cir. 2018)). And the Sixth Circuit has explained that "a reasonable interpretation of a violation of prison policy . . . is not 'indisputably meritless.'" *Brown v. Bott*, No. 21-2834, 2022 WL 3449219, at *3 (6th Cir. June 22, 2022).

Here, Plaintiff agreed with Defendant's informal resolution of his April 5 Grievance. But, as put forth in Dunn's memo, Defendant actually was instructed that she should cease temporarily appointing members and hold an election. Part of the relief Plaintiff sought in his Grievance was for an election to be held. After filing his grievance, Defendant prepared to hold an election, and Plaintiff was elected. Thus, in the case at bar, the Court finds that Defendant's argument that Plaintiff's erroneously interpreted CPP 14.6, even if true, or agreed with her response does not make the April 5 Grievance frivolous. *Davis v. Fiering*, 2025 WL 4673600, at *2.

Nor does the April 5 Grievance appear to be abusive or manipulative of the grievance process. *See King v. Zamiara*, 680 F.3d at 699. Instead, it appears to the Court to be a good faith question or challenge to whether Defendant was following CPP 14.6. *See Brown v. Bott*, 2022 WL 3449219, at *3. This is especially so since, after Plaintiff's grievance, Defendant held an election in which Plaintiff was elected. However, Sixth Circuit caselaw, discussed below, suggests but has not held that where the underlying conduct is "*de minimis*" the grievance is frivolous. Because the law on the issue of what constitutes a *de minimis* grievance is unclear, the Court turns to the question of whether Defendant is qualifiedly immune.

To avoid qualified immunity:

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Bletz v. Gribble*, 641 F.3d 743, 750 (6th Cir. 2011) (cleaned up). When evaluating existing precedent, the Sixth Circuit "look[s] first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits." C*hampion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir. 2004). However, the analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

Although the Sixth Circuit has not determined whether a *de minimis* act underlying a grievance can form the basis of a retaliation claim, it has acknowledged some cases which appear to suggest as much. *Harp v. Hallett*, No. 19-cv-13789, 2024 WL 1533645, at *3 (E.D. Mich. Apr. 9, 2024) (citing *Maben*, 887 F.3d at 264). In *Maben*, the Sixth Circuit acknowledged that some of its decisions "appear to suggest" that a grievance is frivolous if the "underlying grievance itself is *de minimis*," but also that the Sixth Circuit has described "a non-frivolous grievances as a 'legitimate' grievance." *Id*. at 264-65. However, the Sixth Circuit did not need to decide the "*de minimis*" question in *Maben*, concluding instead that a grievance made by a prisoner about a "'severely inadequate portion'" of food was a grievance about "prison conditions" and, therefore, protected conduct. *Id*. at 264. This was the state of the law on the subject at the time relevant here.

Since then, the caselaw has continued to recognize that "[b]eyond the general acknowledgment that grievances used to abuse or manipulate the grievance system are frivolous, limited authority exists as to what renders a grievance frivolous." *Wilcox v. Chamberlin*, No. 2:20-CV-178, 2022 WL 17586332, at *3–4 (W.D. Mich. Nov. 15, 2022), *report and recommendation adopted*, 2022 WL 17584964 (W.D. Mich. Dec. 12, 2022). The *Wilcox* Court continued, "As acknowledged by the Sixth Circuit in *Maben v. Thelen*, 'cases in this Circuit appear to suggest that

a prisoner's grievance is frivolous when the underlying grievance itself is *de minimis*.'" *Id*. The court found that the grievance in question was *de minimis* because "whether or not MDOC policy required Wilcox to execute separate disbursement forms for his outgoing mail . . . Wilcox has not demonstrated that PC Chamberlin's demand for separate forms had an adverse impact on him." *Id*. at *4 (footnote omitted) (citing *Thaddeus-X v. Love*, No. 98-2211, 2000 WL 712354, at *2–3 (6th Cir. May 22, 2000) (finding that a grievance complaining about a prison employee eating at his desk was "patently frivolous as the defendant's conduct had no adverse impact on [the plaintiff]"); *see also Anderson v. Gallagher*, No. 23-1751, 2024 WL 1364701, at *3 (6th Cir. Mar. 26, 2024) (observing that the Sixth Circuit has declined to decide the issue of whether there is a *de minimis* exception); *Stubbs v. Henry*, No. 1:25-CV-02203-RJS, 2026 WL 958169, at *7–8 (N.D. Ohio Apr. 9, 2026) ("It is unclear after *Maben* whether inmate grievances lose their First Amendment protection even when raising '*de minimis'* issues.") (citing *Maben*, 887 F.3d at 264-65).

Because it was not clearly established at the time Plaintiff filed his April 5 Grievance that filing a grievance about prison policies not being adhered to was protected conduct, the Court finds that Defendant is entitled to qualified immunity on the claim that she retaliated against Plaintiff based on his April 5 Grievance. The Court will grant summary judgment to Defendant on this claim.

***2. June 7 Grievance***

After Defendant hired Hendrixson but before she decided that she did not want to hire Plaintiff at all and to request that the number of Grievance Aides be capped at two, Plaintiff filed his June 7 Grievance. In this grievance, Plaintiff complained of Defendant's retaliation when she

denied him the "right to assist another inmate at the committee hearing" and when she hired Hendrixson as a Grievance Aide. DN 52-2, PageID #: 303-04.

Plaintiff's grievance alleging that Defendant was retaliating against him was clearly not frivolous.[10] *See Scott v. Stone*, 254 F. App'x 469, 470, 472 (6th Cir. 2007) (where prisoner plaintiff filed grievances "related to an ongoing pattern of abuse and retaliation from prison staff" those grievances were protected conduct); *Hendricks v. Wessell*, No. 2:11-CV-399, 2011 WL 7637312, at *10 (S.D. Ohio Dec. 5, 2011) (grievances complaining of constitutional violations were protected conduct), *report and recommendation adopted sub nom. Hendricks v. Hazzard*, No. 2:11-CV-399, 2012 WL 1072295 (S.D. Ohio Mar. 29, 2012).

**B. Adverse Conduct**

In remanding, the Sixth Circuit pointed to caselaw supporting the proposition that "the refusal to [hire Plaintiff] for the position, and the alleged removal of the position to prevent him from getting it, could . . . rise to the level of an adverse action." DN 30, PageID #: 197 (citing *Robinson v. Killips*, No. 18-1485, 2019 WL 1931873, at *3 (6th Cir. Feb. 22, 2019) (order); *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991)).

On remand, Defendant does not dispute that Plaintiff was subjected to adverse conduct. DN 52-1, PageID #: 264 n.3. The Court therefore turns its attention to the third element, whether there was a causal connection between the June 7 Grievance and the adverse conduct.

[10] Plaintiff's grievance insofar as not being allowed to represent another inmate or grieve that he was not allowed to represent the other inmate was not protected conduct. An inmate does not generally have an independent right to help other prisoners with their grievances. *Herron*, 203 F.3d at 415. He does only if "the inmate receiving the assistance would otherwise be unable to pursue legal redress." *Id.* To make out this derivative claim, the Sixth Circuit has held that a plaintiff wishing to represent another inmate must allege that "his help was necessary for the aggrieved inmate to pursue his legal rights." *Heyward v. Cooper*, 88 F.4th 648, 658 (6th Cir. 2023) (citing *Hermansen v. Ky. Dept. of Corr.*, 556 F. App'x 476, 477 (6th Cir. 2014)). And Plaintiff did not do that in the case *sub judice*.

### C. Causation

#### *1. Summary-Judgment Motion*

On June 7, 2023, the remaining open Grievance Aide position was posted, but Defendant contends, Plaintiff's application for that position again was improperly filled out. DN 52-1, PageID #: 265. Regarding the decision not to fill the third remaining Grievance Aide position, after the position was posted on June 7, 2023, Defendant states that she began to question whether the remaining Grievance Aide position was necessary based on the fact that GRCC held only a little more than half of its capacity and because of the daily volume of grievances.[11] *Id*. at PageID #: 276. Defendant explains that because Inmate Scott Gaither had been a Grievance Aide for some time, including periods when there were three Grievance Aides and periods when he was the only Grievance Aide, she asked for his opinion; he agreed that two Grievance Aides were adequate to assist the current inmate population. *Id*. Then, on or after June 9, 2023, Defendant met with her supervisor Deputy Warden Gibson who oversaw the Classification Committee. *Id*.

According to Defendant, Deputy Warden Gibson agreed with her that, based on the current inmate population and workload, if the Grievance Aide job duties could be adequately performed by two inmates it was then unnecessary to fill the third position. *Id*. at PageID #: 266; *see also* DN 52-3, PageID #: 315 (Gibson's Affidavit). Both Defendant and Deputy Warden Gibson found this important because unnecessarily filling one paid inmate position left other necessary paid positions, such as food service, landscaping, and maintenance, unfilled. DN 52-3, PageID #: 315. Deputy Warden Gibson therefore ordered that the position remain unfilled, and the position was not re-posted. *Id*. The Warden affirmed that decision. *Id*.

---

[11] GRCC's maximum capacity is approximately 900 inmates, and at that time it held only 490. DN 52-2, PageID #: 274.

Defendant attaches her affidavit averring that Hendrixson "properly filled out his application." DN 52-2, PageID #: 275. She avers that Plaintiff's application was missing information, *i.e.*, approval from his current supervisor. *Id*. at PageID # 276. Defendant also provides a copy of her June 8 decision on Plaintiff's application in which she indicated that she was not willing to hire him, and in the comments she stated, "Inmate not released from job – Application not filled out correctly." *Id*. at PageID #: 300.

Defendant further avers that she "never held any animus against [Plaintiff] or any inmate for filing any grievance, including those directed toward me about the performance of my job or against me personally." *Id*. at PageID #: 277. And she avers that she understands that inmates may "become frustrated by their imperfect understanding of the grievance mechanism and direct that frustration toward the Grievance Coordinator." *Id*. at PageID #: 277-78.

Regarding the hiring of Hendrixson rather than Plaintiff, Defendant attests that she received a number of applications for the open Grievance Aide positions, including Plaintiff's. *Id*. at PageID #: 275. She also avers that she decided *on June 8, 2023, after Plaintiff filed his June 7 Grievance* that she was not willing to hire him. *Id*.

Defendant continues that Hendrixson, who worked in the library, came to Defendant's office to inquire about the open Grievance Aide position. *Id*. After doing so, he submitted a properly filled out application. *Id*. While Hendrixson was not under her supervision, he worked in the same area as her office, she was familiar with his work habits, and he met the criteria to serve as a Grievance Aide. *Id*. Conversely, she lacked familiarity with Plaintiff, as he had only recently arrived at GRCC and was working as a janitor. *Id*. at PageID #: 275-76. Therefore, Defendant "felt that Hendrixson was the best candidate to fill the position," and she hired him. *Id*. at PageID #: 276.

Defendant also offers the affidavit of Deputy Warden Gibson who avers that on June 9, 2023, she met with Defendant who informed her that she had posted Grievance Aide positions several times in May; that she had hired Hendrixson; and that one position remained open. DN 52-3, PageID #: 314. According to Deputy Warden Gibson, it was Defendant's position "that based on her knowledge and experience as Grievance Coordinator" and given the current population and the volume of grievances, filling the remaining position was not necessary. *Id*. She continued that Defendant had spoken with Gaither, who had been a Grievance Aide for some time, and he agreed. *Id*. at PageID #: 314-15. Deputy Warden Gibson's affidavit explains that her duties included "oversight of the allocation of inmate jobs in the facility" and given Defendant's "informed opinion" and the "current inmate population and workload . . . I agreed that it was unnecessary to fill the third position." *Id*. at PageID #: 315. She avers that based on her professional experience, "the proper allocation of inmate resources is important [because] KDOC facilities cannot function without paid inmate workers" to keep the prison operational. *Id*. She directed that the position remain unfilled, the Warden affirmed her decision, and the position was not reopened. *Id*.

***2. Plaintiff's Response***

Plaintiff disputes Defendant's description of the job-application process asserting instead that the procedure was actually: (1) the applicant, here Plaintiff, turned in his application; (2) if Defendant wanted to hire him she would indicate that decision on the form; and (3) the application would then go to Plaintiff's current supervisor for a decision to release him or not. DN 54, PageID #: 329. He points to the affidavits of Inmates Matthew Dixon and Jeremy Stone, who both averred that when they applied for a job in the library they were not required to obtain a release from their supervisor. DN 1-16, PageID #: 115; DN 1-17, PageID #: 116.

Plaintiff also provides his affidavit in which he avers that he had previously served as a Grievance Aide at three other institutions; that he "became a Certified Legal Aide in 2021 with a passing score of 98%"; that Defendant had access to his file; that "she knew the history of his work ethic"; and that inmates elected him to represent them at Grievance Committee hearings. DN 54-1, PageID #: 336.

***3. Defendant's Reply***

Defendant's reply again maintains that the June 7 Grievance cannot be considered a causal connection because she hired Hendrixson before Plaintiff filed that grievance. DN 55, PageID #: 368. She attaches a new affidavit in which she avers in pertinent part that Plaintiff submitted applications on May 18 and June 7, 2023, for open positions: "both were not properly filled out because they were missing approval from [Plaintiff's] work supervisor to be released from his current job. These failures factored into my decision not to hire [him] as a Grievance Aide." DN 55-1, PageID #: 372. Defendant further avers, "Because attention to detail, and the ability to strictly follow procedure, are crucial job skills for Grievance Aides, as the lack thereof can affect the outcome of an inmate's grievance, and [because Plaintiff] had twice failed to demonstrate those skills, Defendant did not feel Plaintiff was a suitable candidate for the position." *Id*.

In counterpoint to the two inmates who averred that they were not required to obtain a release from their supervisor before applying, Defendant's affidavit explains that her "understanding of the job application process was that a supervisor must first indicate a willingness to release an inmate, then [] the hiring supervisor [circles] 'Yes' that they want to hire the inmate, then the application is submitted to the Classification Committee for final approval." *Id*. at PageID #: 373. According to Defendant, her understanding "makes perfect sense, because it informs current supervisors that an inmate is seeking employment elsewhere [and] gives the supervisor the

opportunity to grant or deny release of the inmate, which allows for the orderly movement of inmates between positions." *Id*. Defendant continues that she would not "consider the application of an inmate without a release, because to [do so] would be a waste of time." *Id*. Additionally, she further avers that she did not supervise Inmates Dixon and Stone, did not review their job applications, and "had no role" in hiring them, *id*., implying that she would not know about their different experience of the application process.

***4. Analysis***

In *Richards*, the Sixth Circuit discussed the causation element as follows:

> "Under the third element, '[u]sually the question of causation is a factual issue to be resolved by the jury, and may be satisfied by circumstantial evidence.'" *Maben*, 887 F.3d at 267 (quoting *Harris v. Bornhorst*, 513 F.3d 503, 519–20 (6th Cir. 2008)) (alteration in original). "A plaintiff must show both (1) that the adverse action was proximately caused by an individual defendant's acts, but also (2) that the individual taking those acts was motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *King v. Zamiara*, 680 F.3d [at] 695 (citation and internal quotation marks omitted). "Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant." *Thaddeus-X v. Blatter*, 175 F.3d [at] 399[.]

96 F.4th at 918–19. Though the causation element usually poses a question for the jury, a court may nevertheless grant summary judgment "where it is warranted." *Hartsel v. Keys*, 87 F.3d 795, 803 (6th Cir. 1996) (citing *Langford v. Lane*, 921 F.2d 677, 683-84 (6th Cir. 1991)). If Plaintiff can meet his burden, Defendant must then show that she "would have taken the same action in the absence of the protected activity." *Maben*, 887 F.3d at 267.

Defendant argues that no causal connection to her allegedly retaliatory actions exists. DN 52-1, PageID #: 264. Further, temporal proximity standing alone, she argues, is rarely sufficient to establish causation; generally some other indicia that the conduct was retaliatory is required. *Id*. Defendant contends that Plaintiff's only evidence to support causation is that he filed

two grievances within approximately a month of her hiring Hendrixson and then recommending that the remaining position be left unfilled. However, she misses the fact that the June 7 Grievance was filed *the day before* she decided that she did not want to hire Plaintiff and then began exploring whether the number of Grievance Aides should be capped.

The Sixth Circuit has explained that "[a] day between events presents a very different situation than a week between events, as two days between events has been found to be "'very close' temporal proximity." *Briggs v. Westcomb*, 801 F. App'x 956, 961 (6th Cir. 2020) (quoting *Lindsay v. Yates*, 578 F.3d 407, 419 (6th Cir. 2009). The *Briggs* Court did not reach the question of whether the temporal proximity in that case (one day) would be sufficient on its own to establish a causal connection because there were other "connections between the grievance and the retaliation besides just temporal proximity." *Id.*; *see also Mustin v. Wainwright*, No. 23-3671, 2024 WL 3950810, at *9 (6th Cir. Aug. 27, 2024) ("Here, the close temporal proximity of three days between the protected conduct and the adverse action, viewed alongside Mustin's other allegations, surpasses our threshold for showing a causal relationship.").

The question then is whether there is evidence in the record to support Plaintiff's allegation that Defendant was motivated by his June 7 Grievance to retaliate against Plaintiff by deciding that she did not want to hire him and by moving to limit the number of positions. *Compare Holsapple v. Cunningham*, 817 F. App'x 95, 108 (6th Cir. 2020) (where the defendant offered "proof of valid, expressed discretionary reasons for his decision not to hire [the plaintiff] . . . all of which related to Holsapple's (1) deemed sub-par performance as an officer . . .; (2) negative demeanor and negative interactions with coworkers; and (3) 'propensity to be untruthful'" no causation between the decision not to hire plaintiff and protected conduct existed).

As reason why she did not want to hire Plaintiff, Defendant points to his "improperly filled-out application." But the Court is left with competing evidence as to how the job-application process worked – Plaintiff's explanation would undermine Defendant's characterization of the completeness of Plaintiff's job application, and thus is a material fact. Plaintiff has presented affidavits of two other inmates attesting that they were not required to obtain their current supervisors' signature before filing a job application. Defendant avers what her understanding of the application process was, but does not present evidence of which application procedure was in fact correct. Plaintiff also sets forth his qualifications to be a Grievance Aide in an affidavit and points to Hendrixson's lack of relevant experience, neither of which Defendant disputes.

Defendant avers that she understands that inmates may "become frustrated by their imperfect understanding of the grievance mechanism and direct that frustration" toward the Grievance Coordinator. DN 52-2, PageID #: 277-78. And she avers that she "never held any animus against [Plaintiff] or any inmate for filing any grievance, including those directed toward me about the performance of my job or against me personally." DN 52-2, PageID #: 277-78. But she does not address Plaintiff's allegation that she did not produce applications from other inmates which were in her estimation properly filled out because he was the only applicant besides Hendrixson. She also does not acknowledge the discrepancy between her affidavit that Hendrixson came to her interested in the job and his affidavit in which he attests that Defendant went to Hendrixson and asked him to be a Grievance Aide.

In this case, the Court is presented with not only extremely close temporal proximity but also conflicting evidence as to Defendant's motive for not wanting to hire Plaintiff. And "[a]t the summary judgment stage, the Court must view any reasonable inferences drawn from the evidence in the light most favorable to the non-moving party." *See Matsushita Elec. Indus. Co.*, 475 U.S.

at 587. The Court therefore will deny this portion of Defendant's summary-judgment motion. *See Matulin v. Vill. of Lodi*, 862 F.2d 609, 613 (6th Cir. 1988) ("The matter of causation is an issue of fact which must be decided by the jury.").

**V. CONCLUSION AND ORDER**

Based on the foregoing,

**IT IS ORDERED** that the motion for summary judgment filed by Defendant Brittany Lanier (DN 52) is **GRANTED as to the April 5 Grievance based on qualified immunity**.

**IT IS FURTHER ORDERED** that the summary-judgment motion (DN 52) is **DENIED as to whether the decision not to hire Plaintiff and to permanently remove the Grievance Aide position was in retaliation for Plaintiff's June 7 Grievance**, and that claim remains in this case.

Date: September 2, 2026

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
Counsel of record
4414.009